ROCHESTER CAPITAL LEASING CORPORATION

*v.*

BILLY R. SCHILLING and JOSEPHINE O. SCHILLING.

448 S.W.2d 64.

(*Jackson,* April Term, 1969.)

Opinion filed December 8, 1969.

RICCO GATTI, JR., Memphis, for plaintiff in error.

BRAXTON GANDY and MCDONALD, KUHN, MCDONALD, CRENSHAW & SMITH, Memphis, for defendants in error.

Mr. Justice McCanless delivered the opinion of the Court.

For convenience we will refer to the parties as in the Circuit Court: that is, the plaintiff in error, Rochester Capital Leasing Corporation, as the plaintiff, and the defendants in error, Billy R. Schilling and Josephine O. Schilling, as the defendants. The plaintiff, a New York Corporation, having its principal place of business in Rochester, New York, sued the defendants to recover $3,028.75, plus interest and attorneys' fees which it claimed the defendants owed it under the terms of a contract bearing date of November 10, 1964, by which it had leased to them fifteen postage stamp vending machines. The defendants pled the general issue and pled specifically among other defenses that the plaintiff was a foreign corporation that had not qualified to do business in Tennessee as required by law and that it was, in fact, doing business in Tennessee and therefore had no standing in the court. The plaintiff filed a replication by which it averred that all its business in and from the State of Tennessee was in interstate commerce and that it was not required to comply with the law providing that foreign corporations qualify to do business in Tennessee.

At the end of the plaintiff's proof the court granted the defendants' motion to dismiss the suit on the ground that the plaintiff, a foreign corporation, had failed to qualify as required by Section 48-902, Tennessee Code Annotated, and that since it was doing intrastate business in Tennessee its suit was not maintainable in the courts of the State. The court overruled the plaintiff's motion for a new trial, and it appealed in error to the Court of Appeals which affirmed the Circuit Court. We granted certiorari, and the suit is before us on the single issue of whether the Circuit Court was in error in granting the motion to dismiss.

The facts are not disputed and the decision of the case depends altogether on their legal significance.

The plaintiff is in the business of leasing personal property, a business that consists of buying chattels from manufacturers and distributors and leasing them to the users. In this case a Florida concern, Hilsum Sales Corporation, arranged to place some postage stamp vending machines with the defendants. It had supplied its salesman with forms for use by the seller, by the purchaser, the plaintiff, and by lessees. The defendants gave the salesman an application for the leasing of twenty-five of the machines, the total rent on which for a term of five years would amount to more than $4,000.00. The plaintiff approved an application for only $2,500.00 and thereafter a contract providing for the leasing of fifteen machines at a rental of $55.35 a month for five years was signed by the defendant and sent to the plaintiff at its home office in Rochester, New York. The plaintiff accepted and signed it on November 10, 1964, and on the same day sent Hilsum Sales Corporation its check for

$2,455.88. The machines were shipped to the defendants on October 27, 1964, and were delivered in due course.

After the delivery of the machines the defendants had the attorney write the plaintiff and complained that the salesman had made fraudulent representations to them and demanded that they be released from the contract. The plaintiff declined, the defendants made no payment of rent, and this suit resulted.

The contract provided, among other things, that the defendants should pay all installments of rent at 8 Jay Street, Rochester, New York; that at the end of the five year term, or at the end of any renewal thereof, the machines would be sent to the plaintiff at Rochester at the defendants' expense; that the defendants should keep the machines in repair; and that in case of default all installments of rent should become due.

The plaintiff had no employees or agents in Tennessee and all the transactions before the institution of this suit had been by correspondence.

The determinative issue is whether the plaintiff must be repelled as a foreign corporation engaged in business in Tennessee but which had not qualified as Section 48-902, Tennessee Code Annotated, provides. That Section is as follows:

"*Filing of authenticated charter.*—Before any such corporation shall engage in any character of intrastate business within this state, it shall file in the office of the secretary of state a copy of its charter, duly authenticated by the certificate of its secretary or assistant secretary, under the corporate seal, if there be one, and if not, such fact shall be stated; or, in lieu thereof, such charter may be authenticated by the

certificate, under seal, of the state official whose duty it is to record the original charter in the state in which such corporation is chartered.''

In *Eastern Building & Loan Assn. v. Bedford,* 88 F. 7 [C.C.1898], a New York corporation had made a loan to a Tennessee resident taking as security a deed of trust on Tennessee land, without having complied with the conditions prescribed by the Tennessee statutes for doing business in the State. The negotiations were carried on by mail, through agents in Tennessee, the loan being approved at the company's home office in New York and all notes were payable at that office. The Court held that the contract was made in New York to be performed there, and the company was not doing business in Tennessee within the meaning of the statute.

In an opinion by Judge Felts, our Court of Appeals has said:

"* * * this Court has held that the lending of money in this state by a foreign corporation upon a note after it has been sent to and accepted by the corporation in another state, does not constitute doing intrastate business within the meaning of our statutes.''

*Shoenterprise Corp. v. Butler,* 46 Tenn.App. 302, 329 S.W.2d 361 [1959].

The Court of Appeals relies on the opinion of Chief Justice Neil in *United Artists Corp. v. Board of Censors of City of Memphis,* 189 Tenn. 397, 255 S.W.2d 550, wherein it is said:

"Now what are the facts as shown by the record and which we accept as true but not the conclusion of the pleader? The petition shows without question that

the United Artists ships its films from St. Louis, Missouri, to Memphis, Tennessee, to a studio in the latter city, prior to offering to contract for any local exhibitor. United Artists rents the studio, hires an operator for the purpose of exhibiting the picture to the Censors and possibly exhibitors who may be interested. No contract, however, with any exhibitor has been executed. Following this exhibition the film is returned to the United Artists office in St. Louis, Missouri. If and when the United Artists closes a contract with an exhibitor the former receives a percentage of gross receipts from the sale of theatre tickets. The title to the film remaining at all times in the petitioners.

"In the light of the foregoing undisputed facts there appears no escape from the conclusion that the United Artists has a financial interest in the outcome of every performance. Viewing the facts as set forth in the petition we find that the film *comes to rest* in this State when it is exhibited at a local theatre for the enrichment of appellants. It does not *comes to rest* for any other purpose and constitutes 'doing business' in Tennessee. United Artists and the local exhibitor are jointly engaged in a local business enterprise, the distributor furnishing the mechanical device (the film) while the exhibitor furnishes the theatre as well as the labor necessary to exhibit the picture."

But the facts of the present case are different. Whereas in *United Artists Corp. v. Board of Censors of City of Memphis* the plaintiff corporation not only caused motion pictures to be shipped to it in Memphis but rented a studio and hired an operator to exhibit it to the censors and possibly to exhibitors then it would enter into contracts with exhibitors to show the film under the terms

of which it would receive a percentage of the gross receipts from the sale of theatre tickets. In this case the plaintiff had no agents in the State, and its only activity that was related to this State was to enter into a contract in the State of New York for the leasing of personal property located in Tennessee in consideration of monthly rent to be paid at its office in the State of New York.

We are of opinion that the facts in *United Artists Corp. v. Board of Censors of City of Memphis,* are distinguishable from those in this case, and that whereas United Artists Corp. was clearly engaged in business in Memphis, Rochester Capital Leasing Corporation was a mere property owner and investor; it invested in a lease contract providing for the payment to it periodically of a fixed amount of money. Its investment was comparable to the holder of a promissory note of a Tennessee citizen payable to a non-resident payee.

We conclude that the plaintiff's acts did not constitute doing business in Tennessee within the meaning of Section 48-902, Tennessee Code Annotated, and that it was error for the court to dismiss its suit on that ground. The Circuit Court and the Court of Appeals are reversed and the suit is remanded for a new trial consistent with this opinion.

DYER, CRESON, CHATTIN and HUMPHREYS, JUSTICES, concur.