Orion Ins. Co. PLC *v.* Shenker.

THE ORION INSURANCE COMPANY PLC & another[1] *vs.*
BARBARA B. SHENKER.

Middlesex.   November 10, 1986. — April 1, 1987.

Present: BROWN, CUTTER, & WARNER, JJ.

*Practice, Civil,* Motion to dismiss, Summary judgment. *Rules of Civil Procedure. Insurance,* Surplus line insurance, Foreign insurance company. *Constitutional Law,* Commerce clause. *Interstate Commerce.*

A party to a civil action who desires to raise an issue as to the lack of capacity of any other party to sue or be sued may do so in the principal pleadings by specific and particularized negative averment, Mass.R. Civ.P. 9(a), or, where lack of capacity to sue appears from the face of the complaint, by motion to dismiss under Mass.R.Civ.P. 12 (b) (6) for failure to state a claim on which relief can be granted. [756]

On appeal from a judgment dismissing the claims of two of the three plaintiffs in a civil action, this court declined to address the question whether the judge's consideration of certain materials which accompanied the defendant's motion under Mass.R.Civ.P. 12 (b) (6) would be sufficient to convert the motion into one for summary judgment under rule 56, where any implicit conversion would have been improper by reason of the fact that the plaintiffs were not notified of the conversion and given an opportunity to present relevant materials in opposition to summary judgment. [757]

In an action by two foreign corporations, one an insurance company and the other characterized as a "broker" or "intermediary," seeking recovery of premiums allegedly due them from a Massachusetts insurance agency and two of its officers on account of the placement of certain surplus lines of insurance, the complaint was sufficient to withstand a motion to dismiss on the ground that the plaintiffs, being required to do so, had failed to register to do business in Massachusetts as foreign corporations under G. L. c. 181 and thus were barred from maintaining the action, where, on the basis of the complaint, it could not be said beyond doubt, as to either plaintiff, that it could prove no set of facts to show it was not subject to regulation as a foreign insurance company under G. L. c. 175, § 168, and that it was not required to register as a foreign corporation under c. 181, § 4. [757-762]

[1] Gault Armstrong and Kemble (International) Ltd. The other plaintiff below, Richard P. Milligan, is not involved in this appeal.

CIVIL ACTION commenced in the Superior Court Department on May 24, 1985.

A motion to dismiss was heard by *Joseph S. Mitchell, Jr.,* J.

*Laurence Field* for the plaintiffs.

*Robert D. Cohan* for the defendant.

WARNER, J. The Orion Insurance Company PLC (Orion) and Gault Armstrong and Kemble (International) Ltd. (GAK), both corporations organized and existing under the laws of England, brought this action in the Superior Court against Ronald Eliot Insurance Agency, Ltd. (REIA), a Massachusetts corporation, and Ronald Eliot Shenker and Barbara B. Shenker (both Massachusetts residents and officers and directors of REIA)[2] to recover substantial amounts of premiums allegedly due on account of the placement of surplus lines of insurance with Orion and other London, England, based insurers and underwriting syndicates. We omit further (insignificant in this appeal) description of the parties, those whom they represent and the relief sought. We relate below the relationship and methods of operation between Orion and GAK and REIA.

The defendants moved to dismiss the complaint of Orion and GAK on the ground that they, being required to do so, see G. L. c. 181, § 3, had failed to register to do business in Massachusetts as foreign corporations, see G. L. c. 181, § 4, and thus were barred from maintaining the action. See G. L. c. 181, § 9, as appearing in St. 1973, c. 844, § 1.[3] In a memorandum and order, a Superior Court judge concluded that REIA was doing business in Massachusetts as an agent of both Orion and GAK, that Orion and GAK were not registered to do business in Massachusetts and that, therefore, the action could not be maintained. The judge ordered that the

---

[2] We have before us only the appeals of Orion and GAK as they relate to the claims against Barbara B. Shenker. Following the order allowing the defendants' motion to dismiss, REIA and Ronald Eliot Shenker each filed a suggestion of bankruptcy. Further proceedings as to them were automatically stayed. 11 U.S.C. § 362(a) (1982 & Supp. 1984).

[3] General Laws c. 181, § 9, provides in pertinent part: "[N]o action shall be maintained or recovery had in any of the courts of the commonwealth by the foreign corporation as long as such failure [to register] continues."

action be dismissed as to Orion and GAK. Subsequently, on motion of Orion and GAK, a final judgment dismissing the action as to them was entered pursuant to Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974).

At the threshold, there is a procedural question. Nowhere in the motion, the judge's memorandum and order or the judgment is there reference to any rule of civil procedure under which the motion was brought or allowed. The procedural tool may, of course, inform the standard of review. The rules of civil procedure require that a party wishing to raise the lack of capacity to sue — or be sued — must do so by specific and particularized negative averments if the issue is raised in the principal pleadings. Mass.R.Civ.P. 9(a), 365 Mass. 751 (1974). However, we have not been referred to, nor have we found, any Massachusetts case dealing with the question whether lack of capacity to sue may also be raised under the rules of civil procedure by a defensive motion. See, as to prior practice, *Tyler* v. *Boot & Shoe Wkrs. Union,* 285 Mass. 54 (1933). We look then to the construction of the Federal Rules of Civil Procedure. See *Rollins Environmental Servs. Inc.* v. *Superior Court,* 368 Mass. 174, 179-180 (1975); *Anthony* v. *Anthony,* 21 Mass. App. Ct. 299, 302 (1985). Where lack of capacity to sue appears from the face of the complaint, a motion to dismiss may be brought under Fed.R.Civ.P. 12 (b) (6) for failure to state a claim upon which relief can be granted. See *Klebanow* v. *New York Produce Exch.,* 344 F.2d 294, 296 n.1 (2d Cir. 1965); *Johnson* v. *Helicopter & Airplane Servs. Corp.,* 389 F. Supp. 509, 517-518 & n.1 (D. Md. 1974); *Johnston* v. *Fancher,* 447 F. Supp. 509, 510-511 (W.D. Okla. 1977); 5 Wright & Miller, Federal Practice and Procedure § 1294 (1969 & Supp. 1986). The language of Mass.R.Civ.P. 12 (b) (6), 365 Mass. 755 (1974), is identical to that of the Federal rule, and there is no compelling reason which calls for a different construction of our rule. See *Rollins Environmental Servs., Inc.* v. *Superior Court, supra* at 180. The motion to dismiss as presented in this case fits within rule 12 (b) (6).[4]

---

[4] We do not suggest by this conclusion or in the discussion which follows that summary judgment is not an appropriate procedure for the resolution of questions of capacity to sue.

Orion and GAK submitted affidavits in connection with their applications for trustee process and real estate attachments; these were the only affidavits submitted in the case. In his memorandum and order on the motion to dismiss, the judge said that he considered those affidavits, as well as the pleadings (certifications by the Massachusetts State Secretary that neither Orion nor GAK were registered to do business were attached to the motion to dismiss) in arriving at his decision. The defendant argues that by so doing the judge converted the rule 12(b)(6) motion to one for summary judgment under Mass.R.Civ.P. 56, 365 Mass. 824 (1974). See Mass.R.Civ.P. 12 (b) (6); *White* v. *Peabody Constr. Co.,* 386 Mass. 121, 126 (1982); *Cousineau* v. *Laramee,* 388 Mass. 859, 860 n.2 (1983). Our review of the affidavits shows that they add nothing material to the question of capacity to sue which is not contained in the complaint. See *Stop & Shop Cos.* v. *Fisher,* 387 Mass. 889, 892 (1983) ("The category of 'matters outside the pleading' is broad, but even when construed broadly, such matters must provide some relevant, factual information to the court").

We pass the question whether the judge's consideration of the State Secretary's certificates would be sufficient to convert the motion under rule 12 (b) (6) to one under rule 56. We do so because we think any implicit conversion from a motion to dismiss to a motion for summary judgment would have been improper because Orion and GAK were not so notified and given an opportunity to present relevant materials in opposition to summary judgment. See rule 12 (b) (6); *Stop & Shop Cos.* v. *Fisher, supra.* This is not a case where Orion and GAK should be held to have constructive notice of a conversion to a motion for summary judgment because they submitted relevant material not already properly before the court on the motion to dismiss. Contrast *White* v. *Peabody Constr. Co., supra* at 127-128. See *Stop & Shop Cos.* v. *Fisher, supra* at 892.

We review the allowance of the motion to dismiss and the ensuing judgment under a now familiar standard. " 'In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for

failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Nader* v. *Citron,* 372 Mass. 96, 98 (1977), quoting from *Conley* v. *Gibson,* 355 U.S. 41, 45-46 (1957). *Spence* v. *Boston Edison Co.,* 390 Mass. 604, 615 (1983). "The plaintiffs need only surmount a minimal hurdle to survive a motion to dismiss for failure to state a claim." *Bell* v. *Mazza,* 394 Mass. 176, 184 (1985). In this case, we look to the complaint to determine whether it appears beyond doubt that neither Orion nor GAK can prove any set of facts which would relieve it from regulation as a foreign insurance company under G. L. c. 175 or from registering to do business as a foreign corporation under G. L. c. 181, § 4, with the result that it would be prohibited from maintaining this action under G. L. c. 181, § 9.

The following account emerges from the complaint. REIA entered into arrangements with Orion and GAK for the placement of surplus lines insurance covering loss from the death of horses. See G. L. c. 175, § 47, Thirteenth, and § 168. See also *Church of Christ* v. *St. Paul Surplus Lines Ins. Co.,* 22 Mass. App. Ct. 407, 408 (1986). Under a written contract with Orion, called the "Bloodstock contract," REIA was authorized to bind insurance coverage on behalf of Orion on horses owned by clients domiciled in the United States. All communications, required accountings and premium payments were to be made by REIA to GAK for transmittal to Orion. The complaint (as well as the contract) describes the function of GAK under the contract as "an intermediary" for Orion. Under the contract and under the binding certificate of insurance to be issued by REIA, Orion agreed to submit to any appropriate judicial jurisdiction in the United States in connection with a claim under an insurance policy.

REIA also had an arrangement with GAK, apparently not in any written form, for the placement of surplus lines insurance covering horses in the so-called open market in London. The insurance was also available to cover horses owned by clients domiciled in the United States. REIA would submit a proposal to GAK which would then attempt to place the insurance with

various London insurance companies or underwriting syndicates. Once placed, GAK would confirm the coverage and REIA would remit the premium due to GAK for payment to the insurer.

We first consider the status of Orion. As a foreign surplus lines insurance company not authorized to transact insurance business in Massachusetts, it may nevertheless write policies "on property or interests in this Commonwealth" placed by a Massachusetts licensed special insurance broker[5] when the conditions of G. L. c. 175, § 168, have been met. See *Church of Christ* v. *St. Paul Surplus Lines Ins. Co., supra.* Before Orion could issue such a policy, however, it would be obligated to comply with the regulations contained in G. L. c. 175, § 168, regarding financial and management security.

General Laws c. 181, § 3, as appearing in St. 1973, c. 844, § 1, provides in material part: "Every foreign corporation which does business in the commonwealth . . ., shall be considered to be doing business in the commonwealth for the purposes of this chapter [including the requirement of registration, G. L. c. 181, § 4] unless its activities within the commonwealth consist of no more than one or more of the following: . . . (*e*) performing activities subject to regulations under . . . chapter one hundred and seventy-five, if the foreign corporation has complied with the provisions [of that chapter]." Implicit in this provision is the concept that if a foreign insurance corporation has not complied with applicable statutory regulations governing insurance, it will be considered to be doing business in Massachusetts under the general statute. In such a case, the foreign corporation could not bring an action in our courts. See G. L. c. 181, § 9.

In its brief Orion asserts that it does not fall within exception (*e*) in G. L. c. 181, § 3 (and we take it, therefore, that Orion has not complied with the regulations in G. L. c. 175, § 168), and the defendant seems to assume the validity of that position. No such assumption is warranted, and we do not make one.

---

[5] No question is before us as to the status of REIA as a licensed special broker under G. L. c. 175, § 168.

What triggers the regulations under G. L. c. 175, § 168, is the proposed placement of surplus lines insurance on Massachusetts property or interests with a foreign corporation not authorized to transact business in Massachusetts. In this context, the judge's conclusion that REIA was an agent of Orion is not enough. It appears from exhibits attached to the complaint that Orion may have issued hundreds of policies through REIA under the Bloodstock contract. We do not know whether any of those policies covered "property or interests in this commonwealth." G. L. c. 175, § 168.[6] If none did, Orion's activities would not fall within the reach of the regulations imposed on foreign surplus lines insurance corporations by § 168. That would not end the matter, however, as inquiry would then be required whether Orion could be considered to be doing business in Massachusetts under the general provisions of G. L. c. 181, § 3, and the cases construing it.

Orion devotes much of its brief and reply brief[7] to argument that a requirement that it register to do business in Massachusetts runs counter to the commerce clause of the United States Constitution, art. I, § 8, cl. 3. This is so, says Orion, because any activity which it carried on in Massachusetts was incidental to its activities in interstate commerce. To the extent that this argument might be thought to relate to the power of Massachusetts to regulate the business of insurance, as, for example, by G. L. c. 175, § 168, it is specious. Any doubt about the authority of a State to enact laws to regulate (and tax) the business of insurance, unimpaired by

---

[6] In her brief, the defendant argues that some of the insurance "placed by GAK" was on *property* located in Massachusetts because on exhibits attached to the complaint a "B. Shenker" is listed as an insured. She also contends, on the basis of the same reference, that Orion "issued" insurance to a Massachusetts resident. Aside from what appear to be policy numbers and amounts of premiums, no other information is given. The question appears not to have been raised before the motion judge, and, in any event, the record before us does not show, for example, where the horse or horses covered by any policy are stabled and whether policies were issued by Orion under the Bloodstock contract or through GAK under its brokering arrangement. In short, the information is confused and inconclusive.

[7] Orion and GAK filed a joint brief and reply brief. What we say in this respect as to Orion has, of course, equal force as to GAK.

the commerce clause, was removed by the passage of the McCarran-Ferguson Act in 1945 by 59 Stat. 33, 34. 15 U.S.C. §§ 1011-1015 (1982). See *Prudential Ins. Co.* v. *Benjamin,* 328 U.S. 408 (1946); *Robertson* v. *California,* 328 U.S. 440 (1946); *State Bd. of Ins.* v. *Todd Shipyards Corp.,* 370 U.S. 541 (1962);[8] *SEC* v. *National Sec., Inc.,* 393 U.S. 453, 457-461 (1969); *Attorney Gen.* v. *Travelers Ins. Co.,* 385 Mass. 598, 603-604 n.10 (1982).

If Orion is not subject to any Massachusetts law regulating the business of insurance, it may nevertheless be subject to the general filing requirements of G. L. c. 181, § 4. The prerequisite of doing business in Massachusetts, see G. L. c. 181, § 3, *is* limited by the commerce clause. See *Goodwin Bros. Leasing* v. *Nousis,* 373 Mass. 169, 174 (1977). The judge's conclusion that REIA was an agent of Orion, while relevant, alone is not enough to support qualification requirements for a foreign corporation engaged in interstate commerce.[9] It is unnecessary here to rehearse all of the considerations which are relevant in determining whether a foreign corporation may constitutionally be required to register to do business in Massachusetts. See *Eli Lilly & Co.* v. *Sav-On-Drugs, Inc.,* 366 U.S. 276, 278-283 (1961); *Remington Arms Co.* v. *Lechmere Tire & Sales Co.,* 339 Mass. 131 (1959); *Shulton, Inc.* v. *Consumer Value Stores, Inc.,* 352 Mass. 605, 611-612 (1967); *Goodwin Bros. Leasing* v. *Nousis,* 373 Mass. at 169; *Cinder Prods. Corp.* v. *Schena Constr. Co.,* 22 Mass. App. Ct. 927, 927-928 (1986).

To conclude as to Orion, we cannot say that it appears beyond doubt from the complaint that Orion can prove no set of facts which shows that (1) it is not subject to regulation under G. L. c. 175, § 168, and (2) it is not required to register to do business under G. L. c. 181, § 4. It was, therefore, error

---

[8] Orion makes no due process argument as to any regulation of its business as a foreign insurance company. See *id.*

[9] "We note additionally that the constitutionally required minimal in-State contacts for purposes of subjecting a foreign corporation to the State's qualification requirements are greater than the contacts required for purposes of long-arm jurisdiction." *Id.* at 175.

to allow, under Mass.R.Civ.P. 12 (b) (6), the motion to dismiss as to Orion.

We turn to a brief discussion of the status of GAK. It describes itself as an "intermediary" under the Bloodstock contract and as a "broker" under the arrangement with REIA for the placement of surplus lines insurance in the London open market. It is undisputed that GAK is not a foreign insurance company. The judge concluded, without specification of basis, that REIA was an agent of GAK. Even assuming the correctness of that characterization, that conclusion alone would not be enough to support subjecting GAK to Massachusetts qualification requirements. We note that GAK does not appear to be subject to regulation in its conduct of the business of insurance except that, as a foreign corporation, it is prohibited from being licensed as a special insurance broker for surplus lines insurance covering property or interests in Massachusetts under G. L. c. 175, § 168. See G. L. c. 175, § 174. Absent such a license, it cannot "act[] or aid[] in any manner in the negotiation, continuation, or renewal of [such] a policy of insurance." G. L. c. 175, § 160. The question whether GAK is constitutionally subject to the general qualification requirements of G. L. c. 181, § 4, may be resolved only by an analysis of all of its activities in Massachusetts. We cannot say that it appears beyond doubt from the complaint that GAK can prove no set of facts which shows that it is not required to register to do business under G. L. c. 181, § 4. It was, therefore, error to allow, under Mass.R.Civ.P. 12 (b) (6), the motion to dismiss as to GAK.

The judgment is reversed insofar as it dismisses the claims of Orion and GAK against Barbara B. Shenker.

*So ordered.*