Hillman, J.
INTRODUCTION
Plaintiff Kim O’Malley, has filed suit against Defendants Northbridge VNA and Milford-Whitinsvillle Regional Hospital claiming that defendants wrongfully discharged her in violation of an employment contract. Defendants move for summary pursuant to Mass.R.Civ.P. 56. For the reasons set forth below, the defendants’ motion is ALLOWED.
BACKGROUND
Kim O’ Malley (O’Malley) worked as a home health aide for Milford-Northbridge VNA (VNA) from November 19, 1992, until February 5, 1996. On February 5, 1996, the VNA terminated O’Malley’s employment. In December 1993, O’Malley was involved in an automobile accident in which she incurred injuries. As a result of these injuries, O’Malley could not work for a two-month period. Shortly after her return to work for the VNA, O’Malley returned to her normal duties as a home health aide.
The crux of O’Malley’s complaint rests on an alleged contract by the VNA to accommodate her physical capabilities as a result of the accident by removing heavy patients from O’Malley’s work assignments as a home health aide. O’Malley bases her contention on an alleged meeting with her supervisor, Mary Jo Sequin who worked for the VNA. O’Malley claims that she presented a doctor’s note to Sequin that advised against O’Malley’s lifting of heavy objects because of injuries O’Malley suffered in the above mentioned *568 automobile accident. According to O’Malley, Sequin removed heavy patients from O’Malley’s work schedule. The VNA, however, denies that any such arrangement or meeting occurred between Sequin and O’Malley. O’Malley further claims that heavy patients were placed back on her work schedule as a home health aide once Sequin left her employment with the VNA.
Moreover, O’Malley contends that the employee manual and job description provided to her by the VNA constituted an employment contract. The VNA, on the other hand, claims that neither the employee handbook nor the job description created a contract because the employee manual contained a broad disclaimer that specifically states that the manual is not a contract. O’Malley, therefore, has two claims pending before this court. The first is a breach of contract claim, while the second is a wrongful discharge claim. The VNA moves that this Court dismiss all of O’Malley’s claims. The VNA also moves in the alternative, that this Court grant summary judgment in its favor.
DISCUSSION
Mass.R.Civ.P. 12(b) provides, in part, that a motion to dismiss a complaint under Mass.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted shall be treated as a motion for summary judgment if matters outside the pleadings are presented to and not excluded by the court. See Watros v. Greater Lynch Mental Health & Retardation Ass'n, 421 Mass. 106, 109 (1995). Only Rule 12(b)(6) motions may be converted into summary judgment motions, not other rule 12 motions. Id. If the Court decides to convert a motion to dismiss into a motion for summary judgment, the Court should advise the parties of its intention to do so and afford the parties a reasonable opportunity to present material pertinent to a summary judgment motion. See Stop & Shop Cos. Inc. v. Fisher, 387 Mass. 889, 893 (1983), Orion Ins. Co. PLC v. Shenker, 23 Mass.App.Ct. 754, 757 (1987). Cf. White v. Peabody Construction Co., 386 Mass. 121, 124 (1982); Davidson v. Commonwealth, 8 Mass.App.Ct. 541, 542 n.2 (1979), rev. den., 379 Mass. 927 (1980).
The VNA argues that O’Malley’s complaint fails to state a claim upon which relief can be granted. To support its motion, the VNA has submitted a copy of the job description and a copy of the employee manual given to O’Malley at the initiation of her employment with the VNA. In order for this court to consider the job description and employee handbook, however, it must treat defendant’s motion to dismiss as a motion for summary judgment according to Mass.R.Civ.P. 56 because to consider such evidence would be to consider matters that lie beyond the scope of the pleadings.
This court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983), Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976), Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. Pederson v. Time Inc., 404 Mass. 14, 17 (1989). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Id. at 17.
In deciding a motion for summary judgment, the Court may consider pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976), Mass.R.Civ.P, 56(c). The Court should not weigh evidence, assess credibility or find facts. The Court may only consider undisputed material facts and apply them to the law. See Kelley v. Rossi, 395 Mass. 659, 663 (1985). The nonmoving party cannot defeat the motion for summary judgment by resting on his or her pleadings or mere assertions of disputed facts to defeat the motion. LaLonde v. Eissner, 405 Mass. 207, 209 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass 805, 809 (1991); Kourouvacillis v. General Motors Corp., 410 Mass. 706, 716 (1991).
A. Existence of Express Contract Based Upon Employee Manual
In ruling on this motion for summary judgment, this Court must decide whether the VNA formed an employment contract with O’Malley. O’Malley claims that Summary judgment should not issue in this case because the issue of whether a personnel manual comprised a binding contract is a determination of fact that the jury must make. Contrary to plaintiffs contention, however, this court may grant summary judgment if it finds that based upon the evidence presented no reasonable jury could conclude that the parties in this case formed a binding contract. For this reason, the court grants summary judgment in the case at bar.
It is well settled in Massachusetts that employment is presumed at-will unless there exists an express or imploded contract governing its terms and conditions. See Jackson v. Action For Boston Community Dev., Inc., 403 Mass. 8, 9 (1988). The Massachusetts Supreme Judicial Court has determined that a personnel manual may, in some cases, form the basis of such a contract. O’Brien v. New England Tel. & Tel. Co., 422 Mass. 686 (1996). There is no explicit test or “rigid list of prerequisites” to aid in ascertaining if a personnel manual comprises a binding contract under Massa *569 chusetts law. Id. at 692. Rather, fact finders must consider several factors recently articulated by the SJC in Jackson v. Action for Boston Com. Dev., 403 Mass. 8 (1988).
In Jackson, the SJC held that an implied contract based on the terms of a personnel manual failed to exist where (1) the employer retained the right to unilaterally modify terms; (2) the terms of the manual were not negotiated; (3) the manual stated that it provided only guidance regarding the employer’s policies; (4) no term of employment was specified in the manual; and (5) the employee did not sign the manual to manifest assent. Furthermore, the Massachusetts Supreme Judicial Court in dicta has suggested that the express reservation of rights or disclaimer of obligations by the employer in an employment manual supports a finding that the employment manual does not qualify as employment. See O'Brien, supra at 694. Stated differently these factors help determine if an employee could have reasonably believed that the employment manual constituted the terms or conditions of employment, equally binding on employer and employee. Derrig v. Wal-Mart Stores Inc., 942 F.Supp. 49, 55 (D. Mass. 1996) (citing O’Brien, 664 N.E.2d at 848-49).
The case at bar is analogous to the recent case of Hinchey v. Nynex Corporation, 144 Fed.3d 134 (1st Cir., 1998). In Hinchey, the U.S. Court of Appeals for the First Circuit interpreted Massachusetts law governing employment manuals that qualify as employment contracts and granted summary judgment in favor of defendants on several claims. Most importantly, the court in Hinchey held: (1) that an employee manual given to the plaintiff by his employer (Nynex) failed to qualify as an employment contract because the employer included a disclaimer that disclaimed any contractual rights; (2) that a conversation between plaintiff-employee and his supervisor at Nynex (defendant-employer) in which plaintiff s supervisor made an oral promise to grant plaintiff two years of net credited service was unenforceable because the supervisor lacked both actual and apparent authority to bind Nynex in such an agreement; and (3) that a written statement by the plaintiff providing that the plaintiff did not assent to certain provisions of employer’s policies did not constitute a negotiation because the written statement was submitted to an individual who lacked both actual and apparent authority to bind Nynex.
According to Hinchey, the threshold issue that this court should resolve in determining whether an employment manual constituted a binding contract is whether it was objectively reasonable for plaintiff O’Malley to believe that the terms of her job employee handbook comprised mutually binding obligations. The first page of the employment manual in the case at bar includes a greeting from Cynthia McCrum, the Executive Director of the Visiting Nurse Association (defendant). This greeting explicitly states:
This handbook has been developed to introduce you to the Agency’s policies as they apply to you. It is intended to provide guidance and understanding concerning what you can expect from the VNA and what is expected from you.
The following page of the employment manual states:
This manual states the agency’s policies and procedures as they exist at the time of publication. This manual does not constitute a contract or agreement of employment, either implied or expressed, rather it is merely a statement of policies and procedures. The Agency reserves the right to alter, eliminate, or otherwise change any policy unilaterally, without notice, at any time, including any policy written, oral, or otherwise understood, that does not appear in this employment manual. . . (emphasis added).
All employment with [the defendant] is employment at will and can be terminated by the employee or the [defendant] at any time with or without reason, and with or without notice. Nothing in this manual changes or modifies the employment at will status of an employee or is meant in any way to change or modify that status. No employee has a right to continued definite employment by virtue of anything stated or inferred in this manual or by any representative of this agency, and this provision shall supersede and override any other provisions or policy in this manual or anywhere else.
From the plain language of this statement, it seems inconceivable that an employee could reasonably construe the employee manual as a binding contract. The employer explicitly states that the manual is not a contract, that the employee is an employee at will, and that the employer has a right to unilaterally modify any policies in the manual. Furthermore, O’Malley acknowledged the terms of this manual with her signature. Under the above mentioned test set forth in O’Brien as interpreted in Hinchey therefore, I find that a reasonable jury could not conclude that the employee manual issued by the VNA in the case at bar constituted a binding employment contract.
B. Existence of Contract Based Upon Plaintiff s Meeting With Supervisor
O’Malley contends that an alleged meeting occurred between her and her supervisor, Mary Jo Sequin (O’Malley’s supervisor at VNA), at which O’Malley told Sequin that O’Malley could no longer lift heavy patients because of medical problems O’Malley incurred as the result of an automobile accident. O’Malley further claims that Sequin stated that heavy patients would be removed from O’Malley’s work schedule. O’Malley claims that this meeting resulted in an effective negotiation of the employee manual so as to transform the manual into a binding contract.
*570 Additionally, O’Malley claims that the oral statement allegedly made by Sequin, when considered along with a statement regarding accommodations in O’Malley’s job description (not the employee handbook) provided to her by the VNA, constituted an enforceable contract according to which the VNA promised to remove heavy patients from O’Malley’s work schedule. This Court finds that the alleged meeting between O’Malley and Sequin, when considered along with the statement regarding accommodations in O’Malley’s job description, did not qualify as an enforceable contract between the parties. Again, this Court finds Hinchey instructive.
In order for the above mentioned meeting between O’Malley and Sequin to qualify as a contract between O’Malley and the VNA, Sequin must have possessed either actual or apparent authorify to bind the VNA in such a contract. O’Malley has not presented any evidence from which this court can infer that Sequin possessed actual authorify to bind the VNA in any contract. This Court, therefore, must analyze the VNA’s conduct in order to determine whether or not the VNA cloaked Sequin with apparent authorify.
Apparent authorify results from conduct by the principal that causes a third person to reasonably believe that a particular person has authorify to make representations as the principal’s agent. Hinchey, supra, 144 F.3d 134, at 141 (1st Cir., 1998) Linkage Corp. v. Trustees of Boston Univ., 425 Mass. 1, 679 N.E.2d at 191, 203, cert. denied, 118 S.Ct. 599, 139 L.Ed.2d 488 (1997). As stated above, the second page of the employee manual that the VNA gave to O’Malley, explicitly states that all employment with the VNA is at will and can be terminated by the VNA at any time. The disclaimer goes on to provide:
No employee has a right to continued definite employment by virtue of anything, stated or inferred in this manual or by any representative of this agency, and this provision shall supersede and override any other provision or policy in this manual or anywhere else (emphasis added).
Based upon a cursory reading of the second page of the employee handbook, therefore, O’Malley could not have formed a reasonable belief that Sequin had the requisite authorify to bind the VNA in any type of employment contract. Likewise this clear language provided in the disclaimer qualifies as conduct by the VNA that would negate any authority on the part of Sequin that would allow her to bind the VNA. Thus, Sequin did not have apparent authorify to bind the VNA. Consequently, no contract was formed between O’Malley and the VNA regarding her employment.
O’Malley’s argument that the job description that the VNA provided her constituted a contract must fail. First, the disclaimer mentioned on the first page of the employee handbook applies to any purported promises made in the job description. Second, and more importantly, the job description makes no promise to provide employees with accommodations. The job description provides as follows:
Work environment: The work environment characteristics described here are representative of those an employee encounters while performing the essential functions of this job. Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions (emphasis added).
A plain reading of this section of the handbook does not even qualify as a promise by the VNA to make any accommodations for employees. The relevant provision of the job description does not provide that the VNA “will make” or “shall make” reasonable provisions for disabled employees. Rather, the job description provides that the VNA “may make” reasonable accommodations for disabled employees. Thus, viewed in the light most favorable to O’Malley, this provision does not qualify as a promise by the VNA to make accommodations for O’Malley. Consequently, no employment contract was formed between the parties. O’Malley, therefore, was an employe at will and the VNA could have terminated her at any time so long as the reason for her termination did not violate public policy.
ORDER
For the foregoing reasons, it is hereby ORDERED that summary judgment in favor of defendants Milford-Northbridge VNA and Milford Whitinsville Regional Hospital be ALLOWED.